# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IVAN TORRES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 14-CV-552-JED |
| v. | ) |
| | ) |
| MICHAEL R. POMPEO, Secretary of State of the United States,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The plaintiff, Ivan Torres, initiated this action pursuant to 8 U.S.C. § 1503(a) to challenge the United States Department of State's decision to deny his application for a United States passport. Torres seeks a declaration from this Court that he is a United States citizen and is entitled to a United States passport. He also seeks injunctive relief in the form of an order directing Defendant to issue him a United States passport forthwith.

The Court conducted a bench trial and received the in-court testimony of four witnesses: Gloria Gaona Lopez ("Ms. Gaona"), Maria Fitzpatrick ("Ms. Fitzpatrick"), Griselda Lopez-Duarte ("Ms. Lopez-Duarte"), and the plaintiff Ivan Torres ("Mr. Torres"). The Court admitted into evidence Plaintiff's Exhibits (PX) 1 through 17 and Defendant's Exhibits (DX) 1 through 12. (*See* Tr. 4). The Court also admitted into evidence the deposition testimony of Pastor Victor Orta (Doc. 70-2). Pursuant to Fed. R. Civ. P. 52(a), and upon consideration of the evidence admitted at trial,

---

[1] The Court is aware that Rex Tillerson is no longer the United States Secretary of State. Pursuant to Fed. R. Civ. P. 25(d), when a public officer who is a party in an official capacity ceases to hold office, the officer's successor shall be substituted as a party. The new Secretary of State, Michael R. Pompeo, is hereby substituted in place of Mr. Tillerson. The Court Clerk shall note such substitution on the docket.

including the demeanor and credibility of the witnesses, the Court makes the following findings of fact, by a preponderance of the evidence, and enters the following conclusions of law.

I. **Findings of Fact**

1. The parties have stipulated to the following facts (*see* Doc. 67 at 2):

    a. Mr. Torres is a resident of Oklahoma.

    b. Mr. Torres was born on October 9, 1988.

    c. Mr. Leobardo Torres Yañez ("Mr. Leobardo Torres") and Ms. Gaona are Mr. Torres' parents.

    d. A Mexican birth certificate exists for Mr. Torres, which was filed on April 6, 1989, in Guerrero, Mexico.

    e. Ms. Gaona signed Mr. Torres' Mexican birth certificate above her printed name.

    f. Ms. Lopez-Duarte signed Mr. Torres' Mexican birth certificate above her printed name.

    g. Mr. Salvador Gana Sanchez signed Mr. Torres' Mexican birth certificate above his printed name.

    h. On June 10, 2013, Mr. Torres applied for a U.S. passport at the defendant's Western Passport Center in Tucson, Arizona.

    i. On November 25, 2014, Defendant denied Mr. Torres' U.S. passport application.

2. Ms. Gaona, Mr. Torres' mother, testified at trial that she married Mr. Leobardo Torres in February of 1988 when she was only sixteen years old. (Tr. 16). She then came to the United States around March of 1988, approximately two weeks after her husband left for the United States. (*Id.*). She did not realize she was pregnant at the time. (*Id.*).

3. Ms. Gaona further testified that she had arranged to meet a woman named Maria, whom she knew from Mexico, once she arrived in Tulsa, Oklahoma. (Tr. 16, 26-27). She went

to their planned meeting place, an IGA supermarket, but Maria never showed up. Instead, a woman named Maria Fitzpatrick saw that Ms. Gaona had nowhere to go, and she invited the young woman to live with her and her family. (Tr. 17). The address of the home where Ms. Gaona lived with the Fitzpatricks was 3521 East Virgin Place. (*Id*.).

4. Ms. Fitzpatrick testified that when she met Ms. Gaona at the store she "looked kind of dirty" and was "very skinny." (Tr. 67-68). She explained that she offered her home to the young woman because Ms. Gaona "didn't have family here or people that she knew." (Tr. 68).

5. Ms. Gaona testified that she found out she was pregnant once she was in Tulsa, Oklahoma. (Tr. 18). She did not seek prenatal care from a physician because she did not have insurance and was afraid to go to a hospital. (*Id*.).

6. Pastor Victor Orta ("Pastor Orta"), then-pastor of Emanuel Baptist Church, asserted in his deposition that he saw Ms. Gaona attend his church in 1988 with Ms. Fitzpatrick and Ms. Fitzpatrick's children. (Orta Dep., pp. 10-11).[2] He stated that Ms. Gaona was "really young" and "looked pregnant," though he did not ask at the time whether she was expecting. (*Id*. at 12-13).

7. Ms. Gaona testified that she went into labor on October 8, 1988. (Tr. 35). She testified that she ultimately gave birth to Mr. Ivan Torres at the Fitzpatricks' home around 11:00 a.m. on October 9, 1988. (Tr. 18, 37).

8. Ms. Fitzpatrick, in her testimony, confirmed that Ms. Gaona gave birth to Mr. Torres at her home in Tulsa. (Tr. 68). Both Ms. Gaona and Ms. Fitzpatrick testified that Ms.

---

[2] Pastor Orta initially testified during his deposition that he met Ms. Gaona in 1986. (*See, e.g.*, Orta Dep., pp. 11, 20). He later determined, after reviewing his earlier affidavit, that he was introduced to Ms. Gaona in 1988. (*Id*. at 41, 65).

Fitzpatrick's husband and a co-worker of his assisted Ms. Gaona with the birth. (Tr. 18, 69). Both Mr. Fitzpatrick and his co-worker, Ms. Wanda Willock, are now deceased. (Tr. 69).

9. Ms. Gaona testified that she notified her parents of the birth by sending a letter with people traveling back to Mexico. (Tr. 19). Ms. Lopez-Duarte, Ms. Gaona's mother, also testified that she learned of the birth via letter. (Tr. 95)

10. In his deposition, Pastor Orta testified that he was aware of a new baby at the Fitzpatrick home when he delivered a Christmas basket in December of 1988. (Orta. Dep., pp. 25-26). He realized, in retrospect, that the baby was Ms. Gaona's. (*Id*. at 54).

11. Ms. Gaona testified that she attempted to obtain vaccines for the infant, Mr. Torres, when he was about six months old. (Tr. 20). Ms. Gaona took him to the Oklahoma Health Department but was turned away because she "did not have any documents to show that he was [hers]." (*Id*.). Ms. Gaona wrote to her mother asking what she should do. Her mother, Ms. Lopez-Duarte, decided to register Mr. Torres' birth in Mexico. (*Id*.). Ms. Lopez-Duarte gave similar testimony regarding the impetus for registering Mr. Torres' birth in Mexico. (Tr. 102-03).

12. Ms. Lopez-Duarte testified that she went to the civil registrar's office in Zacapuato, Mexico, when Mr. Torres was approximately six or seven months old. (Tr. 102). She testified that she went to the office with her father-in-law and that they both signed the civil registration document ("the Mexican birth certificate"). (Tr. 103). According to Ms. Lopez-Duarte, she was allowed a month to send the birth certificate to Ms. Gaona in Oklahoma for her signature. (Tr. 105).

13. Ms. Lopez-Duarte and Ms. Gaona both testified that Ms. Lopez-Duarte sent Ms. Gaona the Mexican birth certificate for her signature. (Tr. 41, 105). Ms. Gaona signed the document and returned it to her mother in Mexico. (Tr. 41-42). Once the registration process was complete, Ms. Lopez-Duarte sent the Mexican birth certificate back to Ms. Gaona. (Tr. 42). Ms. Lopez-Duarte testified that she "didn't think that it would cause a problem" for Mr. Torres to be registered in Mexico and would not have done so had she known. (Tr. 108). She explained that "it just seemed easy for [her] to go and register him over there [in Mexico]." (Tr. 109).

14. Apart from signatures described above in the parties' stipulations, the Mexican birth certificate also contains a fingerprint. (*See* DX 1). Above the fingerprint, the document states in Spanish, "Fingerprint of the Registree." Ms. Gaona testified that she did not apply Mr. Torres' fingerprint to the Mexican birth certificate. (Tr. 44). Ms. Lopez-Duarte testified that she did not know when the fingerprint was placed on the document. (Tr. 107-08). Ms. Lopez-Duarte explained that while "the document was filled out for [her]," she did not believe the officials put the fingerprint on there for her. (*Id.*).

15. Mr. Torres testified that his understanding has always been that he was born in Tulsa, Oklahoma. (Tr. 122). Mr. Torres also testified that he has never been told that he was born in Mexico. (*Id.*).[3]

16. On November 21, 2012, the District Court of Tulsa County made a judicial determination that Mr. Torres was born in Tulsa County, Oklahoma. (PX 17).

---

[3] Fed. R. Evid. 803(19) provides a hearsay exception for evidence of "[a] reputation among a person's family by blood, adoption or marriage—or among a person's associates or in the community—concerning the person's birth, adoption, legitimacy, ancestry, marriage, divorce, death, relationship by blood, adoption, or marriage, or other similar facts of personal or family history."

17. In September 2013, United States Customs and Border Protection ("CBP"), an agency of the Department of Homeland Security, issued Mr. Torres a SENTRI card. (PX 9). The SENTRI card indicated that Mr. Torres is a U.S. citizen. (*Id*.). This card has since been revoked. (Tr. 124).

18. After observing their demeanor in the courtroom and listening carefully to their accounts, the Court finds Ms. Gaona, Ms. Lopez-Duarte, and Ms. Fitzpatrick to be very credible witnesses. The Court finds that the quality of their recollections appeared normal for witnesses recalling events that occurred nearly thirty years ago.

19. The Court also notes that the defendant brought forward no witnesses to dispute the testimony given by the plaintiff's witnesses.

20. The Court further finds Ms. Gaona's and Ms. Lopez-Duarte's account for why the Mexican birth certificate exists to be a satisfying explanation, given that Ms. Gaona was very young, uninsured, undocumented, and away from family when she was trying to navigate the healthcare system for her newborn. It makes sense to the undersigned that Ms. Gaona and her mother might decide to seek registration in Mexico in order to have some form of proof that Mr. Torres was, indeed, Ms. Gaona's son.

21. The Court also concludes that the existence of the fingerprint on the Mexican birth certificate—though not explained by the testifying witnesses—does not undermine the witnesses' testimony that Mr. Torres was born in the United States. The Court especially considers that the Mexican birth certificate was not created until several months after Mr. Torres' birth.

## II. Conclusions of Law

1. There are two sources of United States citizenship: birth in this country and naturalization. *See Miller v. Albright*, 523 U.S. 420, 423-24 (1998) (plurality) (citing *United States v. Wong Kim Ark*, 169 U.S. 649, 702 (1898)).

2. Aside from exceptions not relevant to this case, an individual's birth in the United States on October 9, 1988, would render that person a United States citizen under Section 1 of the 14th Amendment to the Constitution and 8 U.S.C. § 1401(a).

3. Under 8 U.S.C. § 1503(a), a person denied a right or privilege on the basis of non-nationality may file a declaratory judgment action for a *de novo* determination of United States citizenship. *See Vance v. Terrazas*, 444 U.S. 252, 256 (1980); *Richards v. Sec'y of State*, 752 F.2d 1413, 1417 (9th Cir. 1985); *Patel v. Rice*, 403 F. Supp. 2d 560, 562 (N.D. Tex. 2005), *aff'd*, 224 F. App'x 414 (5th Cir. Apr. 10, 2007) (unpublished).

4. The plaintiff bears the burden of proving, by a preponderance of the evidence, that he is a United States citizen by virtue of his birth in the United States. *See Liacakos v. Kennedy*, 195 F. Supp. 630, 631 (D.D.C. 1961) ("This burden of proof, however, need not be sustained beyond a reasonable doubt, but merely by a fair preponderance of the evidence, for naturally, the proceeding is of a civil nature."). To meet his burden, the plaintiff must provide evidence that he is a United States citizen.

5. Federal regulations concerning the evidence considered when a person applies for a U.S. passport are instructive here. *See Ramirez v. Clinton*, No. 08-5770, 2011 WL 2838173, at *4 (D. Minn. July 18, 2011) ("Although Department of State regulations are instructive, the court makes a de novo determination of citizenship."). Under these regulations, a birth certificate constitutes primary evidence of birth in the United States. 22 C.F.R. § 51.42(a).

Where primary evidence is not available, secondary evidence may be used, including "hospital birth certificates, baptismal certificates, medical and school records, certificates of circumcision, other documentary evidence created shortly after birth but generally not more than 5 years after birth, and/or affidavits of persons having personal knowledge of the facts of the birth." *Id.* § 51.42(b).

6. A delayed birth record is entitled to less weight than a contemporaneous birth certificate. *Liacakos*, 195 F. Supp. at 632. In this case, the Mexican birth certificate was not filed contemporaneously with Mr. Torres' birth; instead, it was filed approximately six months later. The Court, therefore, gives the Mexican birth certificate some weight, but does not treat this document as creating an irrebuttable presumption that Mr. Torres was born in Mexico. In fact, the Court finds that the testimony of Ms. Lopez-Duarte, Ms. Gaona, and Ms. Fitzpatrick sufficiently rebutted any such presumption.

7. As previously held by this Court, the decision by CBP to issue Mr. Torres a SENTRI card is not entitled to deference. (*See* Doc. 43 at 5-6). The Court treats the issuance and later revocation of Mr. Torres' SENTRI card as background information, but does not rely on these facts in making its determination as to his citizenship.

8. The Court also does not rely on the state court determination of Mr. Torres' birth place, because the witnesses' testimony at trial sufficiently proved by a preponderance of the evidence that Mr. Torres was born in the United States

## III. Conclusion & Order for Relief

In light of the persuasive and credible witness testimony, the Court finds that Mr. Torres has met his burden of proving his birth in the United States by a preponderance of the evidence. Pursuant to 8 U.S.C. § 1503(a) and the Declaratory Judgment Act, 28 U.S.C. § 2201, the Court

hereby declares that Mr. Ivan Torres is a United States citizen based on birth in the United States and is eligible for a United States passport. With respect to injunctive relief, the Court hereby orders Defendant to issue Plaintiff a United States passport without delay.

A judgment inclusive of the foregoing will be entered forthwith.

SO ORDERED this 12th day of February, 2019.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE